## Case No. 4,856.

### FLANNERY v. The ONTARIO.

[1 Am. Law J. (N. S.) 436; 4 Pa. Law J. Rep. 312.]

District Court, E. D. Pennsylvania. Dec. 2, 1848.

Fish and Hazlehurst, for libellant.
W. G. Smith, for respondent.

KANE, District Judge. The steamer Rappahannock was descending the Schuylkill on the 12th of June last, having a number of canal boats in tow. Three of these were attached on each side of her guards, and four others were towed astern. The steamer with her ten boats occupied a space of 168 feet in length, by 128 feet in breadth. The wind and tide were with her. She had reached the lower part of the river, near the Rope ferry, where the channel having six feet of depth at half tide, extends over some 450 or 500 feet in width. At this time the schooner Ontario was beating up, and in her immediate vicinity. Both did what was in their power to prevent collision; but in the judgment of the experienced ship masters, who favored me with their advice as assessors, a collision had become inevitable. The result was, that the schooner struck one of the canal boats in tow of the steamer, and sunk her; and this libel is filed by the proprietor of the sunken boat to recover his damages.

As no blame is imputable to either party, other than is implied in this statement of the facts, the case would at first seem one of those in which by the maritime law each party bears his own loss. But, viewed more closely, there are circumstances connected with it which might justify the application of a still severer rule against the complainant. I readily agree that some of the rules which are obligatory on ordinary steamers when meeting sail vessels, are inapplicable to steam tugs engaged in towing. The superior control over her movements, which belongs to a steamer, her power to vary or arrest, or even reverse her course at pleasure, and which enable her generally to avoid collisions, do not belong to the steam tug, which gives a secondary impulse to a fleet either attached to her sides or following in her wake. The momentum of the system, of

which, under such circumstances, she forms part, may be altogether too great for sudden control. In a case, therefore, where the steam tug had neglected no precaution, I should be unwilling to hold her liable to the same extent or under the same law as a detached steamer.

But to exempt herself from liability on this score, she must be careful not to heighten the risk of herself and others by any want of prudence either in the disposition of her convoy or in the manner of navigating it. The number and size of the vessels which she takes in tow should have careful relation to her power of regulating their movements, and to the nature of the voyage, the number of vessels to be passed or encountered by the way, and the facilities of the particular navigation. On the open bay, or in some of the comparatively unfrequented sounds and inlets of the coast, she may occupy a larger space, and move with less anxious caution, than in the narrow, eccentric and crowded channel of a river like the Schuylkill. Where the voyage is necessarily attended by special hazards, she must sedulously avoid enhancing them. The state of the tide and of the wind are to be regarded, because these may be such as materially to impair her effective power. Where the channel becomes more tortuous or difficult, and other vessels are approaching, she should take that position in the river which may best allow them to pass her, moderate her speed, and stand ready in case of emergency to cast off from her guards and let her whole train of boats pass astern. The steamer in this case, and her train, including the complainant's boat, engrossed a much greater portion of the river than they had a right to. The wind and tide were with them, and the moving mass under their influence as well as that of steam, was undoubtedly too great to be at once arrested or adequately controlled by any action of the steamer's engine.

The captain of the steamer did his best, no doubt, to avert the accident, when he found himself close on the schooner; but it is plain, also, from the evidence, that the schooner could not then escape the collision by any effort of seamanship. Without invoking the rule, therefore, which denies recourse to the libellant where no immediate blame is imputable to the other party, I dismiss the libel on the ground that the steam tow was to blame in spreading itself so widely over the channel.

The gentlemen who heard the case with me, and whose familiarity with the subject of our river navigation gives great value to their suggestions, have communicated to me a few rules, which, if generally observed, may in a great degree prevent such accidents as the one we have been considering. I have, of course, no right to prescribe them as imperative: but they seem to me so reasonable, that, as at present advised, I shall adopt them for my guidance in cases hereafter to arise. They will be appended to this opinion.

The decree of the court is for the respondent, but in consideration of the peculiar circumstances, it will not carry costs.

PER CURIAM. Decree accordingly.

Rules proposed by Captains Gulager and Pedrick, referred to in the foregoing opinion:

We have carefully considered the subject of the collision occurring upon the river Schuylkill, and would respectfully suggest the following regulations, as proper to be observed in the navigation of that river, with the view of diminishing their frequency: 1. That all steam tow boats, bound up or down said river with vessels in tow, be required to keep as near the right hand or starboard shore as their respective drafts of water will permit. By this arrangement vessels bound up the river in tow of a steam boat, will keep nearest the eastern shore, and those bound down to the west; leaving the mid-channel for sailing vessels. 2. That in consequence of the general narrowness of the channel of the Schuylkill, steam tow boats should avoid placing more than one vessel on each side or abeam, but shall tow the remainder astern. 3. That sailing vessels be prohibited from passing between the tow boats so employed and the shore they occupy, as above mentioned. 4. And as it frequently occurs, that several vessels bound in the same direction are obliged to pass near to each other when sailing on opposite tacks, beating to windward in narrow channels, and much damage by collision takes place in consequence of neither vessel being willing to lose ground by giving way; we recommend that the law of the English waters be adopted in such cases, viz: That the vessel on the starboard tack keep her wind, or not alter her course; but the vessel passing her on the opposite or larboard tack, shall if necessary keep away, and pass astern of the vessel first mentioned. Respectfully submitted, C. Gulager. S. Pedrick.